United States District Court
Southern District of Texas
FILED
APR 19 2012
David J. Bradley, Clerk
Laredo Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| HERIBERTO GARCIA, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION NO. L-11-165 |
| GEORGE HEAD, et al., | § § § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

The United Mexican States seeks to extradite Petitioner Heriberto Garcia to face a charge of homicide in the January 8, 2005, shooting of Alfredo Colunga Salinas. On September 25, 2011, the Honorable J. Scott Hacker, after conducting a hearing, issued a certificate of extraditability and warrant in accordance with 18 U.S.C. § 3184. Garcia petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He seeks to avoid extradition, arguing primarily that the extradition record on its face does not support a finding of probable cause and that he offered sufficient evidence of an alibi to obliterate probable cause. After reviewing the record of prior proceedings[1] and the parties' submissions, the Court determines that the record before the magistrate judge contained competent evidence of probable cause and dismisses the petition.

---

[1] Because the instant petition necessarily involves consideration of the complete record of the extradition proceeding, the Court directs the Clerk of Court to remove all papers filed in No. 5:10-MC-27 and place them amidst the papers in the instant case. *See Diaz-Medina v. United States*, No. 4:02-CV-665-Y, 2003 WL 21245992, at *1 n.1 (N.D. Tex. Feb. 13, 2003). The Court further directs that the record of all hearings held in case No. 5:10-MC-27 are likewise made a part of the record in the instant case.

1

I. BACKGROUND

A. Extradition Evidence[2]

On January 8, 2005, police in Nuevo Laredo, Mexico responded to a report of a disturbance at Las Botellas, a bar located near one of the international bridges to Laredo, Texas. *See* Ex. 4 at 1; Def. Ex. 16 at 1.[3] When they arrived, they found the body of Alfredo Colunga Salinas.[4] Eyewitnesses reported that two men arrived in a black pickup truck earlier in the day. The two men entered the bar, and one of them shot Colunga. The eyewitnesses' descriptions of the shooters and the clothes they wore vary. *See generally* Ex. 7–13.

Working in concert with Texas police officials, Mexican authorities eventually traced the ownership of a black pickup truck with Texas license plates found in the parking lot next to Las Botellas to Heriberto Garcia, a United States citizen. *See* Def. Ex. 1–2. Garcia purchased the truck from Juan Ramon Castillo, but Castillo was still listed as its registered owner. *See* Aff. of Sale, Oct. 5, 2004, Ex. 30. Sergeant Robert Hunter of the Texas Ranger Division of the Texas Department of Public Safety (the "Texas Rangers") and Mexican law enforcement officials interviewed Garcia on January 10, 2005. Def. Ex. 16. According to Hunter's report,

---

[2] The magistrate judge's decision includes a comprehensive recitation of the facts and proceedings in this case. In re Extradition of Garcia, ___ F. Supp. 2d ___, 2011 WL 5842372 (S.D. Tex. Sept. 25, 2011). The Court briefly summarizes the extradition record and the magistrate judge's findings. Also, the Court cites to the magistrate judge's slip opinion in order to be consistent with the parties' legal memoranda.

[3] The Court utilizes the citation format adopted by the parties for exhibits. Citations to exhibits refer to the extradition record introduced during the extradition hearing; defense exhibits refer to Garcia's exhibits in that proceeding.

[4] The deceased's sister gives his name as "Lorenzo Alfredo Colunga Salinas." Ex. 15 at 1. The magistrate judge refers to him as "Colunga-Salinas." The Court will use his name as given in the warrant issued by Mexican authorities. Ex. 37 at 1.

2

Garcia stated that he spent the night of January 7, 2005, in a Laredo hotel with strippers and loaned his car to a friend named Rafael Martinez in the early morning of January 8, 2005. *Id.* at 2. Hunter confirmed that Garcia checked into the hotel on January 7, 2005, but could not locate Martinez or otherwise corroborate Garcia's story. *See id.* at 3 (describing efforts including attempt to obtain video surveillance footage).

The Texas Rangers provided Mexican law enforcement officials with a photo line-up for Garcia. *Id.* at 2. According to affidavits in the record (which include some boilerplate language), Mexican authorities showed three of the eyewitnesses photographs of Garcia and Castillo and asked them to identify the shooter. Ex. 34–36. All three identified Garcia, and the eyewitness who said she saw which of the two men shot Colunga identified Garcia as the shooter. *Ibid.*

## B. Prior Proceedings

Based on the above, Garcia was charged in Mexico with homicide, Ex. 37. Mexico sent an official application seeking his extradition, and the United States Attorney for this district filed a complaint for extradition pursuant to 18 U.S.C. § 3184 on October 15, 2010. *In re Extradition of Garcia*, No. 5:10-MC-27 (S.D. Tex. Oct. 15, 2010). The magistrate judge[5] admitted a certified extradition record into evidence pursuant to 18 U.S.C. § 3190, *ibid.*, Dkt. No. 10, and held a hearing on

---

[5] Judge Hacker sat pursuant to 18 U.S.C. § 3184 which permits a magistrate judge to act under the extradition statute when "authorized . . . by a court of the United States." *See* S.D. TEX. GEN. ORDER 2002-13 art. I § D ("A magistrate judge is authorized to handle all matters pertaining to extradition complaints filed pursuant to 18 U.S.C. § 3184"). Courts often refer to a judicial officer with the authority to act under § 3184 as the "magistrate" or "committing court." Ntakirutimana v. Reno, 184 F.3d 419, 424 n.8 (5th Cir. 1999) (citing Sayne v. Shipley, 418 F.2d 679, 685 n.15 (5th Cir. 1969)).

3

April 20, 2011. At the hearing, the magistrate judge admitted into evidence three exhibits proffered by Garcia, Dkt. No. 30 Ex. 1, 12–13, and held that his other 12 exhibits which Garcia contended described the conditions he would likely face in Mexico were inadmissible for the purpose of establishing a humanitarian defense to extradition. The magistrate judge also excluded evidence Garcia offered in support of an alibi defense, finding that it did not obliterate probable cause. *In re Extradition of Garcia*, Slip Op. at 29.

On September 25, 2011, the magistrate judge certified Garcia extraditable pursuant to 18 U.S.C. § 3184. *Id.* He found that he possessed jurisdiction, that the offense charged was within the Treaty, and that probable cause existed to believe Garcia committed the offense charged. The Secretary of State issued a surrender warrant on November 23, 2011, ordering Garcia to surrender by November 25, 2011. Garcia filed the petition now before the Court that same day, and this Court stayed Garcia's extradition pending resolution of the petition. Ct. Order, *Garcia v. Head*, No. 5:11-CV-165, Dkt. No. 3 (S.D. Tex. Nov. 23, 2011).

II. STANDARD OF REVIEW

The Executive possesses "no discretion to surrender [an individual] to a foreign government, unless that discretion is granted by law." *Valentine v. United States*, 299 U.S. 5, 9 (1936). In the extradition statute, 18 U.S.C. § 3181 et seq., Congress "define[d] the procedure to carry out an existing extradition treaty or convention." *Id.*; *see also* 18 U.S.C.A. § 3181(a) (2012). An extradition proceeding begins with the filing of a sworn complaint. *Id.* § 3184; *see also id.* §§ 3190–91

(specifying rules of admissibility of evidence at hearing). After conducting a hearing, the magistrate, "if he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention," certifies the extraditibility of the person charged to the Secretary of State and issues "a warrant for the commitment of [the] person charged to the proper jail." *Id.* The Secretary of State then has the discretion to surrender the person charged to the extraditing nation. *See id.* § 3186.

A person who has been certified extraditable under 18 U.S.C. § 3184 "cannot obtain direct appellate review of either the extraditing court's decision . . . or the Secretary of State's exercise of discretion." *In re United States*, 713 F.2d 105, 108 (5th Cir. 1983) (citing *Collins v. Miller*, 252 U.S. 364, 369 (1920) and *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980)) (other citations omitted); *see also Ntakirutimana v. Reno*, 184 F.3d 419, 423 n.5 (5th Cir. 1999) ("extradition decisions are not appealable under 28 U.S.C. § 1291"). He may, however, collaterally attack the propriety of the certification by applying, as Garcia has in this case, for a writ of habeas corpus under 28 U.S.C. § 2241. *See, e.g., Ntakirutimana*, 184 F.3d 419; *Ludecke v. U.S. Marshal*, 15 F.3d 496 (5th Cir. 1994).

Habeas review does not afford the petitioner "a means of rehearing the magistrate's findings." *Escobedo*, 623 F.2d at 1102 n.5 (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)) (other citation omitted). Instead, the Fifth Circuit characterizes the scope of habeas review as "extremely limited." *Ntakirutimana*, 184 F.3d at 423 (citing *Garcia-Guillern v. United States*, 450 F.2d 1189, 1191 (5th

5

Cir. 1971)). A habeas court may inquire only "(1) whether the committing court had jurisdiction, (2) whether the offense charged is within the treaty, and (3) whether the evidence shows a reasonable ground to believe the accused guilty." *Id.* (citations omitted).

## III. DISCUSSION

Garcia does not argue that the magistrate judge lacked jurisdiction. Nor does he contend that the offense charged falls outside of the applicable extradition treaty. The Court therefore need not address these questions. *Gusikoff v. United States*, 620 F.2d 459, 461 (5th Cir. 1980) (declining to reach jurisdiction and treaty questions when they were not raised in the petition); *Garza v. United States,* 180 F. Appx. 522, 522 (5th Cir. 2006) (per curiam, unpublished) (same). Thus, in the case at hand, the Court may only properly inquire into probable cause, i.e., "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez*, 268 U.S. at 312 (citations omitted).

Garcia advances three arguments in support of his petition for habeas relief. Garcia's first two arguments inquire into whether there was sufficient probable cause. First, he asserts that, due to gaps and inconsistencies in the evidence and an impermissibly suggestive photo line-up, the record is inadequate to support probable cause. Second, he argues that his alibi evidence obliterates probable cause. Finally, he asks the Court to grant him habeas relief because of the conditions he will likely face if extradited to Mexico.

## A. Competent Evidence of Probable Cause

The magistrate judge found probable cause to believe Garcia perpetrated the shooting based on the record before him.[6] The record contains a police report stating that Colunga's body was found between 2:00 and 3:00 in the afternoon in Las Botellas and that he had been shot in the head. *See* generally Ex. 4. The record owner of a black truck found in a parking lot near Las Botellas avers in an affidavit that Garcia purchased that truck from him on October 5, 2004. Ex. 30. A parking lot attendant identified Garcia as one of two men who got out of that truck and entered Las Botellas before the murder on January 8, 2005. Ex. 36. Another eyewitness placed Garcia in Las Botellas that day, Ex. 35, and a third identified him as the person who shot Colunga. Ex. 34. Each eyewitness identified Garcia from a line-up of two photographs. Ex. 33–36. Finally, the record contains what appears to be a printout of Garcia's driver's record from the State of Texas, including a photograph of Garcia. Ex. 24.

According to Garcia, this evidence does not establish probable cause because there is no direct evidence of what photos the eyewitnesses were shown, the eyewitnesses testified inconsistently, and the line-up at which they identified the photo of Garcia was unduly suggestive. Each argument calls upon this Court to exceed the scope of habeas review and re-weigh the evidence before the committing

---

[6] Garcia has never argued that he is not the person sought by Mexican authorities. *See* In re Extradition of Garcia, Slip Op. at 21 n.21. Though Garcia initially framed his petition by asserting that the magistrate judge erred by admitting evidence, his reply makes clear that "Mr. Garcia is not challenging the admission or authenticity of the evidence presented by the Government. He is challenging the magistrate's conclusion that the evidence established probable cause." Dkt. No. 6 at 5.

7

court. *See, e.g., Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1980) (citing *Garcia-Guillern*, 450 F.2d at 1192) ("The credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extraditing magistrate judge.").

### 1. *Evidence of Photograph Shown to Witnesses*

Garcia points out that no direct evidence establishes that a photo of him, rather than someone else, was shown to the identifying witnesses. Acknowledging this, the magistrate judge inferred that the witnesses reviewed Exhibit 24 because the Mexican law enforcement officials conducting the investigation requested a copy of Garcia's driver's license earlier in the investigation. *See In re Extradition of Garcia*, Slip Op. at 30 (citing Report of Sgt. Robert Hunter at 2, Jan. 12, 2005, Def. Ex. 16). Citing no authority, Garcia contends that this inference impermissibly shifted the burden of proof onto him.

Not all inferences drawn from the evidence amount to burden-shifting. A magistrate's inference may not be disturbed on habeas review if it is "supported by ample circumstantial evidence;" direct evidence is not required. *Ludecke v. U.S. Marshal*, 15 F.3d 496, 498 (5th Cir. 1994). Beyond the evidence cited by the magistrate judge, the record contains additional circumstantial evidence that the witnesses identified a photograph of Garcia. Each witness's affidavit describes the photo of Garcia reviewed in detail, but each emphasizes different details. *See generally* Ex. 33–36. These details, such as the shirt worn and presence of a gold chain, match the driver's license photos in the record. *Compare* Ex. 24, 27 *with* Ex.

33–36. The witnesses also point out that Garcia had a goatee when they saw him but that he did not have one in the photo. *E.g.*, Ex. 34 at 2. That observation, too, accurately characterizes the photograph in the record.[7] *See* Ex. 24. These observations provide a counterweight to Garcia's argument that the witnesses' statements were fabricated by the Mexican prosecutor, and the Court may not re-weigh evidence the magistrate judge has already weighed. *See Montemayor Seguy v. United States*, 329 F. Supp. 2d 883, 888 (S.D. Tex. 2004) (holding petitioner's claim that documents in extradition record were forged by prosecutor issue was for Mexican judge).

    *2. Inconsistencies in Evidence*

Garcia also points to inconsistencies in the witnesses' accounts. For example, according to K.R.,[8] a waitress not present at the time of the shooting, S.H., one of the witnesses who identified Salinas, initially described the shooter as short and thin, having dark skin and crowns in his teeth—a description that does not match Garcia's photograph. *Compare* Ex. 12 at 1; Ex. 9 at 1 *with* Ex. 24. Garcia also notes that H.P., a parking lot attendant who identified him as exiting from the truck on the day of Colunga's murder, initially testified that the two men entered Las

---

[7] The record contains two copies of this photograph, one of which appears to be a photocopy of the other. The copy is much darker than the original, and discerning facial hair from the copy would be difficult, but the person shown in the original photo has no facial hair.

[8] In his reply, Garcia adopts the use of initials to identify the witnesses, possibly to protect their identities. Out of an abundance of caution, the Court follows suit.

9

Botellas at approximately 11:15 a.m. Ex. 7 at 1. Other witnesses' put the arrival of the two men at 2:00 or 2:30 p.m. *See, e.g.,* S.H. Aff. at 1, Ex. 9.[9]

Though couched in terms of the sufficiency of the evidence, Garcia's arguments boil down to the contention that the witnesses were impeached as a matter of law, i.e., a credibility challenge to those witnesses' statements. *In Ntakirutimana*, 118 F.3d at 428, an extraditee argued on habeas review that the government failed to introduce evidence sufficient to support probable cause because the witnesses' declarations "lacked probative force and [were] unreliable." *Id.* (footnote omitted). The Fifth Circuit disposed of this argument by concluding that it was a challenge to the witnesses' credibility, and "the issue of credibility is a matter committed to the magistrate and is not reviewable on habeas corpus." *Id.* at 429 (*quoting Escobedo*, 623 F.2d at 1102 n.10). Garcia's credibility challenge must therefore be rejected as well. *See id.*; *cf. also Peroff v. Hylton,,* 563 F.2d 1099, 1101 (4th Cir. 1977) (per curiam), *cited in Escobedo,* 623 F.2d at 1105 (holding newly-discovered evidence impeaching witnesses did not entitle petitioner to new extradition hearing because evidence proffered in original proceeding "amply supported" probable cause determination even in light of new evidence).

### 3. *Photo Line-Up*

In their affidavits, the witnesses state that they were shown only two photographs: one of Garcia and one of the individual listed as the record owner of the black truck found near Las Botellas on the day of Colunga's murder, Juan

---

[9] Two of the witnesses' statements are dated January 3, 2005—before the shooting. *See* Ex. 8 at 1; Ex. 9 at 1. The decision of the investigating public prosecutor gives the date of these statements as January 8, 2005. Ex. 37 at 8, 10.

10

Ramon Castillo. Ex. 34 at 2; Ex. 35 at 2; Ex. 36 at 2. The magistrate judge concluded that these line-ups were suggestive and applied the five-factor test used in a domestic criminal case to determine whether suggestive identification evidence should be admitted in a trial on the merits. *In re Extradition of Garcia*, Slip Op. at 32 (citing *United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001) and *In re Extradition of Cervantes Valles*, 268 F. Supp. 2d 758, 773–74) (S.D. Tex. 2003). Applying the five-factor test in the second step of this analysis,[10] the magistrate judge concluded that the identifications are "independently reliable." *Id.* at 34–38. Garcia assails this finding by asserting the magistrate judge relied on boilerplate language in the witnesses' affidavits and mounting further credibility attacks on those witnesses. *See* Pet.'s Reply at 13–21.

As the magistrate judge observed, the Fifth Circuit declined to disturb on habeas review a probable cause determination based on a single witness's identification of a single photograph along with other circumstantial evidence in *Escobedo*, 623 F.2d at 1102. The *Escobedo* court held that "the credibility of the reported identification is a matter committed to the magistrate and is not reviewable on habeas corpus." *Id.* at 1102 n.10 (citing *Garcia-Guillern*, 450 F.2d at 191–92 and *Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963)).

---

[10] These factors are:
(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the degree of attention paid by the witness; (3) the accuracy of the prior description of the criminal given by the witness; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199–200 (1972).

11

*Escobedo* controls in this case. One of the few practices that might be characterized as more suggestive than showing two photographs in a line-up is showing just one, and *Escobedo* refused to overturn on habeas review a probable cause determination when just such a practice was used. *See id.* at 1102. The Court will not revisit on habeas review the magistrate judge's determination of the weight to be given the concededly-admissible identification evidence.

### B. Alibi

At the extradition hearing, Garcia introduced a copy of a police report prepared on January 12, 2005, by Sergeant Robert Hunter of the Texas Rangers. Def. Ex. 16. The report recounts the investigation of the black truck found near Las Botellas on January 8, 2005, which ultimately resulted in an interview at which Garcia gave a statement.[11] *See id.* at 2. Garcia stated that he spent the evening of January 7, 2005, and early morning of January 8, 2005, with a friend and female strippers at the La Hacienda Hotel in Laredo, Texas. *Id.* at 2. Garcia told police that he loaned his truck to a friend named Rafael Martinez[12] in the early morning of January 8, 2005. *See id.* Hunter confirmed that Martinez checked into the hotel on January 7, 2005, and checked out the next day but could not otherwise corroborate Garcia's story. *Id.* at 3.

The magistrate judge held that alibi evidence may be admissible in an extradition hearing if it "negates" the existence of probable cause. Slip. Op. at 25–26 (citing *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 739 (W.D. La. 1999)).

---

[11] The record does not disclose whether Garcia was advised of his rights. *See* Miranda v. Arizona, 384 U.S. 436 (1966).

[12] Despite his efforts, Hunter never located Martinez. *See id.* at 3.

He concluded, however, that "the evidence merely shows what Respondent told law enforcement when he was questioned about Mr. Colunga–Salinas's murder and what steps or follow-up investigation was undertaken to corroborate Respondent's story." *Id.* at 28. The magistrate judge further found that Garcia provided no affirmative evidence of his whereabouts between 11:15 a.m. and 3:00 p.m. on January 8, 2005—the timeframe in which Colunga was allegedly shot. *Id.* at 29. Accordingly, the magistrate judge excluded this evidence from the record because it did not obliterate probable cause. *Id.* Consequently, the record before the magistrate judge contains no evidence tending to establish an alibi defense.

Garcia argues that the magistrate judge should have drawn an inference in his favor from the absence of evidence of his whereabouts. Citing no authority, he asserts that the magistrate judge should have credited H.P.'s first statement in which he testified that the two people who entered Las Botellas arrived at approximately 11:15 a.m. *See* Ex. 7 at 1. Then, crediting Garcia's version of events, the magistrate judge should have inferred that the hotel in which Garcia stayed had a noon check-out deadline and that Garcia did not check out until the expiration of that deadline. *See* Pet.'s Reply at 13.

Garcia asks this Court—without citing authority—to substitute its credibility determinations for those of the magistrate judge by requiring as a matter of law that the magistrate judge make a series of assumptions and inferences in extradition proceedings. Assuming without deciding that alibi evidence is admissible in an extradition proceeding and that a habeas court has the power to

13

review evidentiary rulings of this kind,[13] the extradition record contains sufficient evidence to support the magistrate judge's conclusion that Garcia's alibi evidence did not obliterate probable cause. *Ludecke v. U.S. Marshal*, 15 F.3d 496, 498 (5th Cir. 1994) (reviewing decision to admit evidence under 18 U.S.C. § 3190 for sufficiency of evidence in record to make predicate determination of admissibility).

Under federal and Texas law, the essence of an alibi defense is "the impossibility of the defendant's guilt based on his physical absence from the locus of the crime."[14] *Roper v. United States*, 403 F.2d 796, 798 (5th Cir. 1968) (citing BLACK'S LAW DICTIONARY 95 (4th ed. 1951)); *see also Windham v. State*, 288 S.W.2d 73, 76 (Tex. Crim. App. 1956) ("When an accused proves that he was at the time in question in a different place from that in which the crime was committed, he is said to prove an alibi."). Garcia points to no evidence in the record—not even his own statements—establishing his whereabouts between 11:15 a.m. and 2:30 p.m., when the magistrate judge found Colunga was shot.[15] Garcia does not argue to the contrary. Indeed, he does not suggest that the record is insufficient to support the magistrate judge's conclusion that probable cause existed; he only argues without authority that the magistrate judge should have drawn different inferences. For the reasons given by the magistrate judge and after reviewing the evidence before

---

[13] Respondents argue that this Court may not review an extradition magistrate's evidentiary rulings and that alibi evidence is inadmissible in an extradition proceeding. *See* Resp. at 10, *compare also, e.g.*, In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 739 (W.D. La. 1999) (holding alibi evidence admissible when it completely obliterates probable cause) with In re Extradition of Santos, 795 F. Supp. 2d 966, 986–87 & n.11 (C.D. Cal. 2011) (criticizing admission of alibi evidence under the rule of non-contradiction). The Court does not reach either argument.

[14] The parties have not introduced evidence of the scope of the alibi defense under Mexican law.

[15] The court does not imply that such evidence would necessarily require a different result.

him, the Court finds that competent evidence supported the magistrate judge's decision to exclude Garcia's alibi evidence.

### C. Conditions in Foreign Nation

Finally, Garcia seeks habeas relief on account of the conditions he alleges he will face if extradited to Mexico. He argues that Mexican newspapers reported that the murder of which he is accused involved Drug Cartels and asserts that he faces grave danger if placed in the Mexican prison system. The magistrate judge excluded this evidence but made it a part of the record as an offer of proof. Slip Op. at 44 n.26.

As Garcia tacitly acknowledges, the well-settled rule of non-inquiry forecloses his argument. *See, e.g., Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999) (citations omitted) (declining to consider arguments that due process rights of petitioner would be violated in extraditing country because: "Due to the limited scope of habeas review, we will not inquire into the procedures that await [the extraditee]."); *id.* at 431 (Parker, J., specially concurring) (explaining that the "ultimate decision [to extradite] in this case may well be a political one that is driven by important considerations of State that transcend the question of guilt or innocence of any single individual."); *Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir. 1980) (citing *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976) ("Alleging that he may be tortured or killed if surrendered to Mexico, Escobedo asks that we bar his extradition on humanitarian grounds. However, the degree of risk to (Escobedo's) life from extradition is an issue that properly falls within the exclusive

purview of the executive branch.") This rule has its genesis in the separation of powers enshrined in our Constitution and the delegation of foreign affairs authority to the Executive Branch. *See ibid.* The Secretary of State has the authority to make humanitarian exceptions once an individual is certified extraditable under § 3184. *See* 18 U.S.C.A. § 3186 (2012). As a unanimous Supreme Court recently explained:

> The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area. *See* THE FEDERALIST NO. 42, p. 279 (J. Cooke ed. 1961) (J. Madison) ("If we are to be one nation in any respect, it clearly ought to be in respect to other nations"). In contrast, the political branches are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is. As Judge Brown noted, "we need not assume the political branches are oblivious to these concerns. Indeed the other branches possess significant diplomatic tools and leverage the judiciary lacks." 479 F.3d, at 20, n. 6 (dissenting opinion).

*Munaf v. Geren*, 553 U.S. 674, 702–03 (2008); *see also id.* at 702 (noting that the United States represented to the Supreme Court that it does not, as a matter of policy, transfer prisoners "where torture is likely to result"). Consequently, "[i]t is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *United States v. Kin-Hong*, 110 F.3d 103, 111 (1st Cir. 1997).

16

## IV. CONCLUSION

For the reasons given above, the Court finds that the magistrate judge's determination of probable cause and exclusion of Petitioner's alibi evidence was supported by competent evidence. The petition for a writ of habeas corpus is therefore **DISMISSED**.

The stay of Petitioner's extradition affected by this Court's order dated November 23, 2011, Dkt. No. 3, is **LIFTED** such that Petitioner is now subject to extradition in accordance with the September 25, 2011, certificate of extraditibility. *See Diaz-Medina v. United States*, No. 4:02-CV-665-Y, 2003 WL 21245992, at *4 (N.D. Tex. Feb. 13, 2003).

It is so **ORDERED**.

SIGNED this 19th day of April, 2012.

_____
Marina Garcia Marmolejo
United States District Judge